Volume Servs., Inc. v. Ovations Food Servs., L.P., 2018 NCBC 107.

STATE OF NORTH CAROLINA

CUMBERLAND COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 194

VOLUME SERVICES, INC.; and
SERVICE AMERICA
CORPORATION; collectively d/b/a
CENTERPLATE,

       Plaintiffs,

v.

OVATIONS FOOD SERVICES, L.P.,
d/b/a SPECTRA FOOD SERVICES
AND HOSPITALITY; GLOBAL
SPECTRUM, L.P., d/b/a SPECTRA
VENUE MANAGEMENT;
CUMBERLAND COUNTY CIVIC
CENTER COMMISSION;
CUMBERLAND COUNTY BOARD
OF COMMISSIONERS; and
COUNTY OF CUMBERLAND,

       Defendants.

**ORDER AND OPINION
ON DEFENDANTS'
MOTIONS TO DISMISS**

1.    **THIS MATTER** is before the Court on: (1) Defendants Cumberland County Civic Center Commission (the "Commission"), Cumberland County Board of Commissioners (the "Board"), and the County of Cumberland's (the "County") (collectively, the "County Defendants") Motion to Dismiss (the "County Defendants' Motion"); and (2) Defendants Ovations Food Services, L.P., d/b/a Spectra Food Services and Hospitality ("Spectra Food") and Global Spectrum, L.P., d/b/a Spectra Venue Management's ("Spectra Management") (collectively, the "Spectra Defendants" and, together with the County Defendants, "Defendants") Motion to

Dismiss (the "Spectra Defendants' Motion"). The County Defendants' Motion and Spectra Defendants' Motion are referred to collectively as "the Motions."

2. The Motions seek dismissal of all claims against Defendants pursuant to North Carolina Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, the Court **GRANTS in part** and **DENIES in part** the Motions.

*Shanahan McDougal, PLLC, by Gregg E. McDougal, Brandon S. Neuman, Jeffrey M. Kelly, and H. Denton Worrell, for Plaintiffs.*

*Poyner Spruill LLP, by J. Nicholas Ellis and Colin R. McGrath, for Defendants Ovations Food Services, L.P. and Global Spectrum, L.P.*

*Cumberland County Attorney's Office, by Robert A. Hasty, Jr., Phyllis P. Jones, and Rickey L. Moorefield, for Defendants Cumberland County Civic Center Commission, Cumberland County Board of Commissioners, and County of Cumberland.*

Robinson, Judge.

## I. INTRODUCTION

3. This action arises out of the award of a contract to provide food and beverage services (the "Food and Beverage Contract") at the Crown Complex, a County-owned facility established in Cumberland County in 1964. The Crown Complex is under the authority of the Board, which created the Commission to act in an advisory capacity and assist in operating the Crown Complex. Plaintiffs Volume Services, Inc. and Service America Corporation, collectively d/b/a Centerplate ("Plaintiffs"), held the Food and Beverage Contract from 1996 until 2018.

4. In 2013, the Commission entered into a contract with Spectra Management for it to manage the Crown Complex. In 2017, as Plaintiffs' contract was nearing its expiration, the Commission decided to invite bids for the Food and Beverage Contract

and issued a request for proposals ("RFP"). Spectra Food and Plaintiffs were the only bidders considered for the Food and Beverage Contract, which was ultimately awarded to Spectra Food.

5. Plaintiffs allege that the RFP process was conducted in an illegal, arbitrary, and unfair manner and that the Spectra Defendants worked together to misappropriate Plaintiffs' confidential business information and improperly influence the RFP process to give Spectra Food an unfair advantage. Defendants seek dismissal of Plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").

## II. FACTUAL BACKGROUND

6. The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6) but only recites those factual allegations that are relevant and necessary to the Court's determination of the Motions.

7. Plaintiffs are Delaware corporations with their principal offices in Stamford, Connecticut. (Second Am. Compl. ¶¶ 5–6, ECF No. 54 ["Compl."].) Plaintiffs provide hospitality services to event venues across the United States. (Compl. ¶ 15.)

8. Spectra Food is a Pennsylvania limited partnership with its principal office in Philadelphia, Pennsylvania. (Compl. ¶ 7.) Spectra Management is a Delaware limited partnership with its principal office in Philadelphia, Pennsylvania. (Compl. ¶ 8.)

9. Cumberland County owns the Crown Complex, a public facility with five venues for public gatherings, events, and exhibitions. (Compl. ¶¶ 16–18.) The Crown Complex is under the governing authority of the Board and is operated by the Commission, which reports to the Board in an advisory role. (Compl. ¶¶ 18–19.) The Commission conducts regular meetings to address matters concerning the Crown Complex. (*See* Compl. ¶ 41.)

10. In 1996, the Board and Plaintiffs entered into a contract for Plaintiffs to serve as food and beverage manager of the Crown Complex for a ten-year term (the "Centerplate Contract") and in August 2007, renewed Plaintiffs' contract for an additional ten-year term. (Compl. ¶¶ 20–21.) Pursuant to the Centerplate Contract, Plaintiffs had, with limited exceptions, the exclusive right to operate all food and beverage services at the Crown Complex in exchange for making investments for improvements to the Crown Complex and paying a percentage of food and beverage sales to the Board.[1] (Aff. Darren Hubbard, Ex. A, §§ 7.1, 22.1, 37.1, ECF No. 36.1 ["Centerplate Contract"].)

---

[1] Because the Second Amended Complaint refers to and relies on the Centerplate Contract, the Court may properly consider the document on a motion to dismiss pursuant to Rule 12(b)(6). *See Oberlin Capital, L.P. v. Slavin,* 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001) ("[W]hen ruling on a Rule 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers[.]"). The same holds for the County's RFP and its Purchasing Manual (discussed below), each of which is referred to and relied upon in the Second Amended Complaint. Consideration of these documents does not thereby convert the Motions into motions for summary judgment. *Schlieper v. Johnson,* 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009).

11. The Centerplate Contract obligated Plaintiffs to report sales and financial information to the manager of the Crown Complex, which was the Commission until 2013. (Compl. ¶¶ 26, 30–32.) The Board agreed not to use or disclose Plaintiffs' confidential information without Plaintiffs' written consent, except to its employees and agents, and to be responsible for ensuring that its employees and agents abided by the confidentiality provision. (Centerplate Contract § 65.)

12. In 2013, the Commission entered into a contract to delegate certain management responsibilities for the Crown Complex to Spectra Management (the "Management Contract"). (Compl. ¶¶ 26, 33.) As part of the Management Contract, Spectra Management agreed to abide by all of the Crown Complex's existing contracts. (Compl. ¶ 27.) Once Spectra Management was on board as manager, Plaintiffs, consistent with their obligations under the Centerplate Contract, submitted their confidential sales information to Spectra Management. (Compl. ¶¶ 30–34.) The information submitted included "detailed reports, pricing policies, and financial information regarding [Plaintiffs'] sales for each event at the Crown Complex." (Compl. ¶ 30.)

13. At a regular meeting in June 2017, the Commission addressed the pending September 30, 2017 expiration of the Centerplate Contract. (Compl. ¶ 41; *see* Centerplate Contract § 4.1.) Assistant County Attorney Phyllis Jones ("Jones") stated that the RFP for the Food and Beverage Contract "would have to be presented to the [Board] for action should the RFP call for capital improvement recommendations." (Compl. ¶ 41.) The Commission voted in favor of establishing a committee (the "Food

and Beverage Ad Hoc Committee") to develop the RFP for publication and to make a preliminary evaluation of submitted proposals to present to the full Commission and then to the Board, if applicable. (Compl. ¶¶ 41–42.)

14. During this and all other Commission meetings during the relevant time period, Rita Perry ("Perry"), a Spectra Management employee, worked for and actively participated on the Commission, assuming responsibilities such as organizing and recording Commission meetings. (Compl. ¶¶ 36–37.)

15. Around August 1, 2017, the Commission initiated a public bidding process and published an RFP inviting sealed proposals for the Food and Beverage Contract to be submitted to the Commission in both electronic and paper form no later than 5:00 p.m. on August 31, 2017. (Compl. ¶ 42; Hubbard Aff. Ex. D, ¶ 1.02, ECF No. 36.4 ["RFP"].)

16. The RFP also required bidders to propose financial terms, including proposals for the percentage of sales to be paid to the Commission and capital investment to "upgrade the [f]oodservice facilities" at the Crown Complex. (RFP ¶¶ 2.13, 3.02, § 3.) Proposals were to include projects to upgrade the facilities, regardless of whether the successful bidder or the Commission would fund all or part of the projects. (RFP ¶ 3.02, § 3.) The RFP stated that capital investments were to be made in an amount no less than $500,000, at a rate of no less than $100,000 per year, for the five-year term of the Food and Beverage Contract, with an additional $250,000 to be paid at a rate of no less than $50,000 per year for any renewal. (RFP ¶ 2.13.) Equipment, leasehold improvements, and small wares purchased as part of

the successful bidder's capital investments were to be immediately titled to the Commission when delivered to or installed in the Crown Complex facilities. (RFP ¶ 3.02, § 3.) The RFP further provided that "[a]t the termination of the [Food and Beverage Contract], for any reason, the Commission will purchase or cause to be purchased the then book value of Food and Beverage Manager's approved investment." (RFP ¶ 3.02, § 3.)

17. In addition to financial proposals, the RFP required bidders to disclose conflicts of interest where the proposer "or any individuals working on the contract has [sic] a possible conflict of interest and, if so, the nature of that conflict." (RFP ¶ 4.02.) Bidders were required to "[i]dentify any material arrangements, relationships, associations, employment or other contacts that may cause a conflict of interest or the appearance of a conflict of interest[.]" (RFP ¶ 3.02, § 2 at 12.) Bidders were also required to disclose "any investigation, litigation, including administrative complaints or other administrative proceedings" involving the bidder and any public-sector clients during the past five years. (RFP ¶ 3.02, § 4.) Bidders were prohibited from having "[a]ny contact with any County or Commission representatives, related officials, or representatives other than those outlined in the RFP[.]"[2] (RFP ¶ 4.04.) Finally, bidders were required to submit with their proposal a non-collusion affidavit, swearing that the bidder "has not, directly or indirectly, entered into any agreement, participated in any collusion, or otherwise taken any action, in restraint of free competition, in connection with the said RFP[.]" (RFP, submittal 6.)

---

[2] Paragraph 4.04 of the RFP does not define or otherwise list the other representatives with whom contact was presumably permitted.

18.     Although the RFP stated that failure to provide required disclosures or violation of the no-contact policy could subject a bidder to disqualification, violation of the non-collusion requirement "[would] cause the Commission to reject" the violating bidder's proposal. (RFP ¶¶ 4.02–03, 4.05.) Notwithstanding the stated requirements for proposals, the Commission reserved the right to waive technicalities, formalities, irregularities, or nonconformities. (RFP ¶ 4.05.) The Commission further reserved the right to amend, modify, withdraw, or cancel the RFP and not award the contract to any bidder. (RFP ¶ 4.05.)

19.     At a Commission meeting after the RFP was issued, Plaintiffs questioned and objected to the RFP process because they were concerned that "a decision had already been made" to award the Food and Beverage Contract to Spectra Food. (Compl. ¶¶ 61–62.) The Commission stated that "the RFP process was facilitated through the County procurement process, not the . . . Commission; therefore it was inappropriate for questions related to the RFP to be posed to the Commission and for the Commission to respond." (Compl. ¶ 62.)

20.     By the stated deadline, the Commission had electronically received bids from Plaintiffs and a third-party vendor. (Compl. ¶ 64.) The Commission also received a bid from Spectra Food that was not submitted electronically. (Compl. ¶ 65.) The Commission disqualified the third-party vendor for failing to include certain forms, leaving only Plaintiffs' and Spectra Food's bids. (Compl. ¶ 66.)

21.     However, the Commission did not disqualify Spectra Food for failing to submit an electronic bid or for failing to disclose a proceeding against it where a

Florida administrative law judge found a contract awarded to Spectra Food by the University of Central Florida to be invalid, *inter alia*, because of Spectra Management's involvement as manager of the facility for which Spectra Food was to provide services. (Compl. ¶ 106.) Spectra Food's proposal also stated explicitly that it "worked together" with its "on-site team at the Crown Complex" in preparing the proposal. (Compl. ¶ 103.) Further, Spectra Food's proposal reflected that Spectra Food and Spectra Management share a president and senior vice president, and the proposal was signed by an executive for Spectra Management. (Compl. ¶¶ 101–02.) Finally, Spectra Food's bid contained financial proposals that were "strikingly similar" to Plaintiffs' confidential reports and the terms contained in the Centerplate Contract. (Compl. ¶¶ 108–09.)

22. The Commission met to discuss the proposals submitted by Plaintiffs and Spectra Food on September 26, 2017. (Compl. ¶ 69.) Perry (a Spectra Management employee) "substantively participated in the bid process and review," (Compl. ¶ 71), in effect, as an adjunct, non-voting member of the Commission, (*see* Compl. ¶¶ 35–39, 71, 85). For instance, she proposed that the Food and Beverage Ad Hoc Committee be dissolved. (Compl. ¶ 71.) Jones gave each Commission member present at the meeting a copy of Plaintiffs' and Spectra Food's bids along with bid summaries and briefs that were prepared in advance. (Compl. ¶¶ 72–73.) The summaries and briefs misrepresented the amounts of capital investments proposed by Plaintiffs and by Spectra Food to make Spectra Food's proposal seem more attractive. (Compl. ¶ 74.) After a Commission member pointed out that Plaintiffs'

proposed financial investment was greater than Spectra Food's, Jones recommended deferring action for a month and instructed members to review the proposals prior to the Commission's next meeting. (Compl. ¶¶ 75–76.) Perry then gathered the proposals that were left by Commission members and took them to Spectra Management's office. (Compl. ¶ 77.)

23. About two weeks later, the County requested that Plaintiffs and Spectra Food give presentations on their respective proposals to the Commission at a special meeting on October 24, 2017. (Compl. ¶¶ 79–80.) The morning of the meeting, Plaintiffs contacted Jones and asked whether Spectra Food had access to Plaintiffs' proposal, which Jones did not deny. (Compl. ¶ 80.) At the meeting, Plaintiffs objected to Spectra Food's proposal and the unfair advantage of Spectra Management having access to Plaintiffs' proposal. (Compl. ¶ 82.) Thereafter, Plaintiffs and Spectra Food gave their respective presentations prior to the Commission holding a second meeting at which it selected Spectra Food's proposal by a vote of eight-to-one "without any public discussion." (Compl. ¶¶ 83–86.)

24. The Commission then entered into the Food and Beverage Contract with Spectra Food without the Board's approval. (Compl. ¶ 89.)

25. The Centerplate Contract expired on February 28, 2018, after which Spectra Food became the food and beverage manager for the Crown Complex. (Compl. ¶¶ 251–52.) The Centerplate Contract obligated the Board or Plaintiffs' successor, upon the termination of the agreement, to purchase Plaintiffs' remaining useable inventory and supplies. (*See* Centerplate Contract § 53.4.2.) "[W]ithin fifteen

[] days after the date of expiration or termination of [the Centerplate Contract]," Plaintiffs were to submit a schedule of all useable inventory and supplies purchased by Plaintiffs for use at the Crown Complex. (Centerplate Contract § 53.4.2.) Within five days of receipt of the schedule, the Board or Plaintiffs' successor had to reimburse Plaintiffs' costs. (Centerplate Contract § 53.4.2.) Although Plaintiffs submitted an invoice and schedule of remaining inventory and supplies to the Board, the Board has refused to reimburse Plaintiffs. (Compl. ¶¶ 253–55.)

## III. PROCEDURAL BACKGROUND

26. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motions.

27. Plaintiffs initiated this action by filing a verified Complaint on January 8, 2018. (ECF No. 3.)

28. This action was designated as a mandatory complex business case by order of the Honorable Mark Martin, Chief Justice of the Supreme Court of North Carolina, dated January 9, 2018, (ECF No. 5), and was assigned to the undersigned by order of then Chief (now Senior) Business Court Judge James L. Gale dated January 10, 2018, (ECF No. 2).

29. On February 20, 2018, before the Centerplate Contract expired, Plaintiffs filed a Motion for Temporary Restraining Order ("TRO Motion") and a brief in support. (ECF Nos. 18, 20.) Defendants were given an opportunity to respond to the TRO Motion on an expedited basis and they filed briefs in opposition. (ECF Nos. 27, 29.) The Court held a hearing on the TRO Motion at which the Court orally

announced its ruling that the TRO Motion was denied.  On March 6, 2018, the Court entered an order memorializing its oral ruling.  (ECF No. 38.)

30.     After the Court's ruling on the TRO Motion, Plaintiffs filed their first Amended Complaint.  (ECF No. 48.)

31.     Shortly thereafter, Plaintiffs filed a consent motion for leave to amend the first Amended Complaint.  (ECF No. 52.)   The Court granted Plaintiffs' consent motion, (ECF No. 53), and on May 1, 2018, Plaintiffs, with leave of Court, filed their Second Amended Complaint, asserting sixteen claims.

32.     Plaintiffs assert claims against the Spectra Defendants for: misappropriation of trade secrets (Count IX); unfair or deceptive trade practices ("UDTP") (Count XII); tortious interference with prospective economic advantage (Count XIII); and civil conspiracy (Count XIV), (Compl. 45, 51, 53, 55).  Plaintiffs assert claims against the County Defendants for: violations of Plaintiffs' state and federal due process and equal protection rights (Count III); an alternative claim for negligent misrepresentation (Count VI); and violations of N.C. Gen. Stat. § 143-129, North Carolina's public bidding statute (Count VII), (Compl. 32, 40, 42).  Plaintiffs assert a claim against Spectra Management and the County for breach of fiduciary duty and constructive fraud (Count IV) and a claim against Spectra Food for aiding and abetting breach of fiduciary duty (Count V), (Compl. 37, 39).  Plaintiffs further assert two claims for breach of contract against the Board (Counts X and XVI), and one breach of contract claim against Spectra Management (Count XI), (Compl. 48, 50, 56).  Plaintiffs assert claims for civil conspiracy against the Spectra Defendants, the

County, and the Commission (Count XV). (Compl. 55.) Finally, Plaintiffs assert two claims for declaratory judgment (Counts I and II), and a request for a writ of mandamus, (Count VIII), (Compl. 28, 30, 43).

33. The Motions have been fully briefed, and the Court held a hearing on the Motions on August 30, 2018 at which all parties were represented by counsel.

34. The Motions are ripe for resolution.

## IV. LEGAL STANDARD

35. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations of the Second Amended Complaint in the light most favorable to Plaintiffs. The Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court construes the Second Amended Complaint liberally and generally accepts its allegations as true. *See Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

36. The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (citation and quotation marks omitted). Furthermore, a "trial court can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Laster*, 199 N.C. App. at 577, 681 S.E.2d at 862. The Court can also

ignore a party's legal conclusions set forth in its pleading. *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013).

37. Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports [the] claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the . . . claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *see also Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

## V.    ANALYSIS

38. Plaintiffs assert sixteen separate counts in their Second Amended Complaint. The particularly affected Defendants seek dismissal of all sixteen counts.

### A.    Declaratory Judgment (Counts I & II)

39. Plaintiffs assert two claims for declaratory judgment. First, Plaintiffs request that the Court declare that the formal bidding procedures required by N.C. Gen. Stat. § 143-129 are applicable to the award of the Food and Beverage Contract. (Compl. ¶ 127.) Second, Plaintiffs request that the Court declare the award of the Food and Beverage Contract to Spectra Food invalid and that the contract should have been awarded to Plaintiffs as the only responsive bid or, alternatively, declare

that the County be compelled to engage in a new bid process that excludes Spectra Food due to its incurable conflicts of interest. (Compl. ¶ 138.)

40.    The North Carolina statute governing the procedure for letting public contracts provides, in relevant part, that:

> No construction or repair work requiring the estimated expenditure of public money in an amount equal to or more than five hundred thousand dollars ($500,000) or purchase of apparatus, supplies, materials, or equipment requiring an estimated expenditure of public money in an amount equal to or more than ninety thousand dollars ($90,000) may be performed, nor may any contract be awarded therefor, by any . . . political subdivision of the State, unless the provisions of this section are complied with[.]

N.C. Gen. Stat. § 143-129(a).  For contracts subject to this statutory requirement, any government unit seeking bids is required to advertise publicly an invitation for proposals.  *Id.* § 143-129(b).  All proposals in response to the invitation must be sealed and only opened in public.  *Id.*  The invitation to bid must state the time and place for opening proposals, and the knowing opening of a sealed bid prior to that time without the permission of the bidder is a Class 1 misdemeanor.  *Id.*

41.    The RFP issued by the Commission required bidders to "indicate as part of [their] proposal any capital investment proposer projects will be required to upgrade the [Crown Complex], regardless of the [sic] whether the Food and Beverage Manager or the Commission provides the funding for all or part of that capital investment." (RFP ¶ 3.02, § 3.)  The RFP also required bidders to propose "capital improvements" to the Crown Complex in an amount no less than $500,000 for the initial five-year term of the agreement, with an additional $250,000 at a rate of no less than $50,000 per year if the agreement is renewed.  (RFP ¶ 2.13.)

42.     The RFP further provided that the Commission would "purchase or cause to be purchased the then book value of Food and Beverage Manager's approved investment" at the contract's termination. (Compl. ¶¶ 48–49.) Additionally, the RFP stated that "[t]itle to all equipment, leasehold improvements, and smallwares [sic] [would] be immediately placed in the name of the Commission." (Compl. ¶ 49.) Leasehold improvements were defined as "all equipment, fixtures, furnishings, finishes and construction affixed to the building, by more than an electrical or gas connection." (RFP § 2.03(R).)

43.     Apart from the RFP, the County Purchasing Manual states that "North Carolina general statutes allow local policy to be more restrictive than general statute [sic]. This policy is more restrictive regarding bid requirements of services and dollar thresholds[.]" (Purchasing Manual § 3.8.) The County Purchasing Manual states that the Board must approve of "[a]ll contracts for the construction or demolition of buildings or making any other improvements to real property owned by the county[,]" which is considered "simply a good practice because of the permanency of these transactions." (Purchasing Manual, attachment B, § 3.) Finally, the Purchasing Manual states that "[f]or a contract to comply with all North Carolina legal requirements, it must have been solicited in accordance with all applicable statutory remedies *and county policies*[.]" (Purchasing Manual, attachment B, ¶ 7 (emphasis added).)

44.     Both the County Defendants and the Spectra Defendants separately argue that neither of Plaintiffs' requests for declaratory judgment are proper because the

statutory bid procedures in section 143-129 are inapplicable because the Food and Beverage Contract did not call for the expenditure of public funds. (Mem. Supp. Mot. to Dismiss Defs.' Cumberland Cty. Civic Center, Cumberland Cty. Bd. Comm'rs, & County of Cumberland 10–11, ECF No. 56 ["County Defs.' Br. Supp."]; Mem. Supp. Spectra Food & Spectra Mgmt.'s Mot. to Dismiss Second Am. Compl. 8, ECF No. 58 ["Spectra Defs.' Br. Supp."].) Instead, Defendants argue that the successful bidder would fund all capital improvements and would pay commissions on sales to the County, thus demonstrating that neither the County, Board, nor Commission would purchase or fund anything in relation to the Food and Beverage Contract. (County Defs.' Br. Supp. 6 & n.2; Spectra Defs.' Br. Supp. 8.) The County Defendants further argue that, although not obligated to comply with section 143-129, the Commission elected to issue an RFP that governed the process and gave the Commission discretion to modify the requirements for bids or waive any irregularities in proposals, or even to withdraw the RFP and not award a contract at all. (County Defs.' Br. Supp. 7–8.) The County Defendants thus argue that a proper process was used to award the Food and Beverage Contract, making declaratory judgment improper. (County Defs.' Br. Supp. 7–8.)

45. Plaintiffs respond that they were entitled to certain bidding procedures based on statute, County policy, and the County's representations both in the RFP and at Commission meetings. (Pls.' Resp. Opp'n to Spectra Defs.' & Count Defs.' Mots. to Dismiss Second Am. Compl. 10–17, ECF No. 71 ["Pls.' Br. Opp'n"].) Plaintiffs contend that section 143-129 applies because the RFP called for the expenditure of at

least $500,000 in capital improvements, the book value of which the Commission would be obligated to purchase at the contract's termination. (Pls.' Br. Opp'n 14.) Plaintiffs argue that, because this creates the possibility that significant public funds will be expended in the event the contract is terminated, section 143-129 is applicable. (Pls.' Br. Opp'n 14 & n.3.) Apart from statutory requirements, Plaintiffs contend that the County Purchasing Manual requires formal bid procedures for purchases of apparatus, supplies, materials or equipment in amounts of $90,000 or more" and requires contracts that require improvements to real property owned by the County to be approved by the Board. (Pls.' Br. Opp'n 11–12.)

46. Under the North Carolina Declaratory Judgments Act, "[a]ny person . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the . . . statute, ordinance, contract or franchise, and obtain a declaration of rights, status, or other legal relations thereunder." N.C. Gen. Stat. § 1-254. "The purpose of the Declaratory Judgments Act is, to settle and afford relief from uncertainty and insecurity, with respect to rights, status, and other legal relations . . . . It is to be liberally construed and administered." *Asheville Lakeview Props., LLC v. Lake View Park Comm'n, Inc.*, 803 S.E.2d 632, 636 (N.C. Ct. App. 2017) (omission in original) (internal quotation marks omitted).

47. The Court "has jurisdiction to render a declaratory judgment only when the pleadings and evidence disclose the existence of a genuine controversy between the

parties to the action, arising out of conflicting contentions as to their respective legal rights and liabilities under a deed, will, contract, statute, ordinance, or franchise. . . ." *New Bar P'ship v. Martin*, 221 N.C. App. 302, 308, 729 S.E.2d 675, 681 (2012). "When the record shows . . . no basis for declaratory relief, or the complaint does not allege an actual, genuine existing controversy, a motion for dismissal under G.S. 1A-1, Rule 12(b)(6) will be granted." *Chapel H.O.M. Assocs., LLC v. RME Mgmt., LLC*, 808 S.E.2d 576, 581 (N.C. Ct. App. 2017) (omission in original). Our Supreme Court has stated that a sufficient declaratory judgment claim exists when:

> (1) . . . a real controversy exists between or among the parties to the action; (2) . . . such controversy arises out of opposing contentions of the parties, made in good faith . . . as to the validity or construction of a statute, or municipal ordinance, contract, or franchise; and (3) . . . the parties to the action have or may have legal rights, or are or may be under legal liabilities which are involved in the controversy, and may be determined by a judgment or decree in the action . . . .

*Id.* (first, second, fourth, and fifth omissions in original) (emphasis omitted) (quoting *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 449, 206 S.E.2d 178, 188 (1974)). "[A] motion to dismiss 'is allowed only when the record *clearly shows* that there is no basis for declaratory relief as when the complaint does not allege an actual, genuine existing controversy.'" *Id.* (quoting *Duke Power*, 285 N.C. at 439, 206 S.E.2d at 182).

48. Plaintiffs' allegations demonstrate that the parties' controversy arises out of whether N.C. Gen. Stat. § 143-129 governed the RFP process used by the Commission to award the Food and Beverage Contract. Thus, the controversy arises out of Plaintiffs' and Defendants' conflicting interpretations as to the construction of

a statute. Further, a declaration that section 143-129 applies to the letting of the Food and Beverage Contract would entitle Plaintiffs to the benefit of the procedures set forth by the General Assembly in section 143-129 and would legally obligate the County Defendants to follow those procedures. Notwithstanding Defendants' arguments as to why section 143-129 has no applicability to the Food and Beverage Contract, on a Rule 12(b)(6) motion, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (alteration in original) (citation and internal quotation marks omitted).

49. Plaintiffs have alleged that the Food and Beverage Contract may involve the expenditure of significant sums of public money, which would trigger the bid requirements of section 143-129. (Compl. ¶¶ 49–50.) Although the Court may properly consider the RFP, the Court concludes that, in the absence of a more complete record, it cannot determine from the RFP alone that section 143-129 has no applicability to the parties' dispute. *See City-Wide Asphalt Paving v. Alamance Cty.* (*City-Wide I*), No. 2:96CV66, 1996 U.S. Dist. LEXIS 14428, at *10–11 (M.D.N.C. Aug. 12, 1996) (declining to determine whether section 143-129 applied where the record contained insufficient details of what the public project entailed). Moreover, "a motion to dismiss a declaratory judgment action should not be granted merely because the party seeking the declaration ultimately is incorrect in his interpretation of the statute at issue." *Conner v. N.C. Council of State*, 365 N.C. 242, 259, 716 S.E.2d

836, 847 (2011). The Court believes that it should revisit the applicability of section 143-129 to the present dispute on a more complete record.

50. Therefore, the Court concludes that, for purposes of the Motions, Plaintiffs have sufficiently alleged that an actual controversy exists between the parties regarding the proper interpretation of the public bidding statute. Accordingly, because each of Plaintiffs' claims for declaratory judgment are based on the parties' conflicting interpretations of section 143-129, the Motions are denied as to those claims.

**B.     Writ of Mandamus (Count VIII)**

51. Plaintiffs request that the Court issue a writ of mandamus requiring the Board to complete the bidding process for the Food and Beverage Contract in a legal, fair, and unbiased manner, which Plaintiffs allege would require awarding the contract to Plaintiffs as the only responsive bidder. (Compl. ¶ 193.) Alternatively, Plaintiffs request that the Court issue a writ of mandamus requiring the County Defendants to conduct a new, fair bidding process that excludes Spectra Food due to its incurable conflicts of interest. (Compl. ¶ 194.)

52. "A writ of mandamus is an extraordinary court order to a board, corporation, inferior court, officer or person commanding the performance of a specified official duty imposed by law." *Morningstar Marinas v. Warren Cty.*, 233 N.C. App. 23, 26–27, 755 S.E.2d 75, 78 (2014). "[A] party seeking [the] writ . . . must have a clear legal right to demand it, and the party to be coerced must be under a positive legal obligation to perform the act sought to be required." *Meares v. Town of*

*Beaufort*, 193 N.C. App. 49, 55, 667 S.E.2d 244, 249 (2008) (alterations in original); *see also Holroyd v. Montgomery Cty.*, 167 N.C. App. 539, 543, 606 S.E.2d 353, 356–57 (2004) ("The function of [a] writ [of mandamus] is to compel the performance of a ministerial duty—not to establish a legal right, but to enforce one which has been established." (alterations in original)).

53.     For issuance of a writ of mandamus to be proper, "performance of the duty-bound act must be ministerial in nature and not involve the exercise of discretion. Nevertheless, a court may issue a writ of mandamus to a public official compelling the official to make a discretionary decision, as long as the court does not require a particular result." *In re T.H.T.*, 362 N.C. 446, 453–54, 665 S.E.2d 54, 59 (2008) (internal citations omitted). Additionally, for a writ to issue, "the defendant must have neglected or refused to perform the act requested, and the time for performance of the act must have expired." *Id.* at 454, 665 S.E.2d at 59 (internal quotation marks omitted). "Finally, the court may only issue a writ of mandamus in the absence of an alternative, legally adequate remedy." *Id.*

54.     The County Defendants argue that they were not legally obligated to comply with section 143-129 and, therefore, a writ of mandamus is not proper in this action. (*See* County Defs.' Br. Supp. 16.) They further argue that a writ of mandamus ordering an award of the Food and Beverage Contract to Plaintiffs would improperly compel a discretionary act. (County Defs.' Br. Supp. 16.) Similarly, the Spectra Defendants argue that the RFP, and not section 143-129 or the County purchasing policies, governed the process for awarding the Food and Beverage Contract. (Spectra

Defs.' Br. Supp. 10–11.) Accordingly, the Spectra Defendants contend that because the RFP clearly gave the Commission considerable discretion in the selection process, the issuance of a writ of mandamus would not be proper. (Spectra Defs.' Br. Supp. 11 n.8.)

55. Plaintiffs argue that conducting a fair bid process is a ministerial act required by law that may be ordered by a writ of mandamus. (Pls.' Br. Opp'n 29–30.) Plaintiffs further argue that discretionary acts of local government are subject to mandamus where the government has abused its discretion or taken action that was arbitrary, capricious, or in disregard of law. (Pls.' Br. Opp'n 30–31.)

56. Plaintiffs allege that the Commission issued an RFP purporting to set forth the requirements for bids on the Food and Beverage Contract and the procedures that would be followed in reviewing bids. (Compl. ¶¶ 41–43.) The RFP stated that sealed proposals must be submitted in hard and electronic copy by a certain deadline. (RFP ¶ 1.02.) As part of the proposal, bidders were required to disclose any investigation, litigation, or administrative proceedings involving the company in the past five years, (RFP ¶ 3.02, § 4), and to disclose any potential conflicts of interest, (RFP ¶ 4.02). Finally, the RFP prohibited bidders from having "[a]ny contact with any County or Commission representatives, related officials, or representatives other than those outlined in the RFP[.]" (RFP ¶ 4.04.)

57. Notwithstanding the discretion afforded the Commission in awarding the Food and Beverage Contract, Plaintiffs allege numerous instances where the Commission failed to comply with applicable law, County policy, and the terms of the

RFP. For example, the Commission disqualified a third bidder for failing to include certain required forms, but did not disqualify Spectra Food for failing to submit its bid electronically, disclose the administrative proceeding against it, or disclose potential conflicts of interest. (Compl. ¶¶ 65–66, 106.)

58. Plaintiffs further allege that, when the proposals were presented to the Commission at a public meeting, Jones provided bid summaries and briefs prepared ahead of time, thus demonstrating that the sealed bids were not opened publicly, a violation of County policy and state law. (Compl. ¶¶ 43, 73.) Moreover, Plaintiffs allege that the summaries misrepresented the Plaintiffs' and Spectra Food's proposed capital investments to make Spectra Food's proposal seem more attractive. (Compl. ¶ 74.)

59. In addition, Plaintiffs allege Spectra Management and Spectra Food are closely related companies that shared executive officers. (Compl. ¶¶ 101–02.) Plaintiffs allege that Perry was both a Spectra Management employee and a representative of the Commission who called for action to be taken and otherwise substantively participated in the bid review process. (Compl. ¶ 71.) Further, after the Commission meeting at which the proposals were first presented, Perry took Plaintiffs' and Spectra Food's proposals to Spectra Management's office before both bidders gave the required presentations on their proposals. (Compl. ¶ 77.)

60. In light of Plaintiffs' allegations, the Court concludes that, at this early stage of the proceedings, Plaintiffs should be permitted to maintain a claim for a writ of mandamus, at least pending development of a factual record. Plaintiffs' allegations

are sufficient, for purposes of the Motions, to state a claim that the County Defendants, although exercising discretion in awarding the Food and Beverage Contract, abused their discretion regardless of whether the process was governed by statute, County policy, or the terms of the RFP itself. *See Kinsey Contracting Co. v. Fayetteville*, 106 N.C. App. 383, 384, 416 S.E.2d 607, 608 (1992) ("In reviewing the decision of a local government to award a public contract '[i]t is a general rule that officers of a municipal corporation, in the letting of municipal contracts, perform not merely ministerial duties but duties of a judicial and discretionary nature, and that courts, in the absence of fraud or a palpable abuse of discretion, have no power to control their action.'" (quoting *Mullen v. Town of Louisburg*, 225 N.C. 53, 60, 33 S.E.2d 484, 488–89 (1945))). The numerous allegations of impropriety are sufficient, at this stage of the proceedings, to support a request for a writ of mandamus and survive a motion to dismiss under Rule 12(b)(6).

61. However, to the extent Plaintiffs seek a writ of mandamus requiring the Court to award the Food and Beverage Contract to Plaintiffs, the Motions are granted. Plaintiffs request that the Court issue a writ of mandamus "requiring the [Board] to complete the RFP selection process in a legal, fair, and unbiased manner, *which requires awarding the contract to [Plaintiffs] as the only responsive bidder*." (Compl. ¶ 194 (emphasis added).) To the extent this language is ambiguous between (1) asking the Court to award the Food and Beverage Contract to Plaintiffs, and (2) asking the Court to order a process, which Plaintiffs contend will inevitably lead to an award to them of the Food and Beverage Contract, the Court clarifies that only

the latter interpretation of the relief Plaintiffs seek survives the Motions. *See In re T.H.T.*, 362 N.C. at 454, 665 S.E.2d at 59 ("[A] court may issue a writ of mandamus to a public official compelling the official to make a discretionary decision, as long as the court does not require a particular result.").

62. Therefore, the Motions as to Plaintiffs' request for a writ of mandamus, except to the extent such request asks the Court to award Plaintiffs the Food and Beverage Contract, are denied.

### C. Violation of N.C. Gen. Stat. § 143-129 (Count VII)

63. Plaintiffs assert a separate claim for violation of N.C. Gen. Stat. § 143-129 against the County Defendants, alleging that Plaintiffs are entitled to damages and equitable relief for the violation of North Carolina's public bidding statute. (Compl. ¶¶ 178–83.)

64. The County Defendants argue that, because section 143-129 does not create a private cause of action, Plaintiffs' claim is subject to dismissal. (County Defs.' Br. Supp. 8.) The County Defendants contend that statutes permit a private cause of action only where such claims are expressly permitted by the legislature and that section 143-129 provides no such right. (County Defs.' Br. Supp. 8.)

65. Plaintiffs argue that the violation of section 143-129 entitles them to assert a separate cause of action because North Carolina has allowed damages claims to proceed under a public bidding statute. (Pls.' Br. Opp'n 29 (citing *Hawkins v. Town of Dallas*, 229 N.C. 561, 564, 50 S.E.2d 561, 563 (1948)).) Plaintiffs further cite to a Court of Appeals decision considering whether section 143-129 creates a private cause

of action, wherein the court observed that a similar action was permitted under a related statute. (Pls.' Br. Opp'n. 29 (citing *City-Wide Asphalt Paving, Inc. v. Alamance Cty.* (*City-Wide II*), 132 N.C. App. 533, 537–38, 513 S.E.2d 335, 338–39 (1999)).)

66.     Plaintiffs' reference to and reliance upon *Hawkins* is inapposite. In *Hawkins*, the court permitted the plaintiff to recover for money damages, not on a claim that section 143-129 or a similar statute had been violated to the harm of plaintiff, but on an unjust enrichment claim where plaintiff had performed under a public contract that was later declared void because it was not bid in compliance with section 143-129. *Hawkins*, 229 N.C. at 564, 50 S.E.2d at 563.

67.     Plaintiffs' reliance on *City-Wide II* is similarly problematic. In that case, the Court of Appeals noted that, although a similar action was allowed under a related statute, it was unclear whether that case, as here, involved claims for monetary damages. *City-Wide II.*, 132 N.C. App. at 538, 513 S.E.2d at 339 (citing *Kinsey Contracting Co.*, 106 N.C. App. at 383, 416 S.E.2d at 607). The court concluded that *Kinsey* was not dispositive on whether a private cause of action exists under section 143-129 and did not reach the issue because plaintiff's claim failed for other reasons. *Id.* at 538, 513 S.E.2d at 338–39.

68.     "[O]ur case law generally holds that a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute." *Lea v. Grier*, 156 N.C. App. 503, 508, 577 S.E.2d 411, 415 (2003) (internal quotation marks omitted). A legislative intent to create a private cause of

action may appear implicitly from the statutory language. *See, e.g., Williams v. Alexander Cty. Bd. of Educ.*, 128 N.C. App. 599, 604, 495 S.E.2d 406, 409 (1998). "[A]n implicit right of a cause of action exists when a statute requires action from a party, and that party has failed to comply with the statutory mandate." *Sugar Creek Charter Sch., Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 195 N.C. App. 348, 356, 673 S.E.2d 667, 673 (2009).

69.     As noted by the Court of Appeals in *City-Wide II*, no North Carolina case specifically addresses whether N.C. Gen. Stat. § 143-129 confers a private cause of action on disappointed bidders. *City-Wide II*, 132 N.C. App. at 538, 513 S.E.2d at 338–39. The cases involving claims arising out of alleged violations of section 143-129 all involve requests for equitable or declaratory relief and are, therefore, inconclusive as to whether Plaintiffs may recover damages for violation of the statute. *See, e.g., Ronald G. Hinson Elec. v. Union Cty. Bd. of Educ.*, 125 N.C. App. 373, 375–77, 481 S.E.2d 326, 328–29 (1997). The Court is not aware of any North Carolina appellate opinions holding that similar provisions of our public contracting law do or do not provide a private cause of action. Furthermore, although a private cause of action may appear implicitly from the statutory language, Plaintiffs make no arguments that the language of section 143-129 *implicitly* creates such a right. *See Lea*, 156 N.C. App. at 508–09, 577 S.E.2d at 415–16 (affirming dismissal of claim for private right of action because, *inter alia*, plaintiffs did not contend the statutory language implicitly created such a right).

70.     In the absence of controlling case law on this issue and any argument from Plaintiffs that section 143-129 implicitly creates a private cause of action, the Court concludes that Plaintiffs have failed to state a claim for violation of section 143-129. Accordingly, the County Defendants' Motion should be and is granted as to Plaintiffs' separate claim for violation of N.C. Gen. Stat. § 143-129.

**D.     Fiduciary Claims (Counts IV & V)**

71.     Plaintiffs assert claims for breach of fiduciary duty and constructive fraud against Spectra Management and the County and a claim for aiding and abetting breach of fiduciary duty against Spectra Food.  (Compl. 37–40.)

72.     Claims for breach of fiduciary duty, constructive fraud, and aiding and abetting fiduciary duty (presuming such a cause of action is recognized in North Carolina) require the existence of a fiduciary relationship.  *Forbis v. Neale*, 361 N.C. 519, 528, 649 S.E.2d 382, 388 (2007) ("[Constructive fraud] arises where a confidential or fiduciary relationship exists, which has led up to and surrounded the consummation of the transaction in which the defendant took advantage of his position of trust to the hurt of plaintiff." (internal citations and quotation marks omitted)); *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) ("For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties."); *New Friendship Used Clothing Collection, LLC v. Katz*, 2017 NCBC LEXIS 72, at *45 (N.C. Super. Ct. Aug. 18, 2017) ("Although it remains open whether North Carolina recognizes a claim for aiding and abetting a breach of fiduciary duty,

if North Carolina were to recognize such a claim, then the elements would include . . . violation of a fiduciary duty by the primary party . . . .").

73. The Spectra Defendants argue that Plaintiffs' claims that depend on the existence of a fiduciary relationship fail because Plaintiffs have not adequately alleged the existence of a fiduciary relationship. (Spectra Defs.' Br. Supp. 19–20.) The County Defendants do not address Plaintiffs' claims for breach of fiduciary duty and constructive fraud in their briefs.

74. Plaintiffs contend that the Second Amended Complaint's factual allegations and claims, as a whole, are sufficient to establish a relationship of trust and confidence between Plaintiffs, on the one hand, and Spectra Management and the County, on the other hand, sufficient to give rise to a fiduciary duty. (Pls.' Br. Opp'n 23–25.)

75. "A fiduciary relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008) (quotation marks omitted). "Only when one party figuratively holds all of the cards – all of the financial power or technical information, for example – have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen." *Id.* (quotation marks omitted).

76. "[P]arties to a contract do not thereby become each other's fiduciaries; they generally owe no special duty to one another beyond the terms of the contract . . . ."

*Highland Paving Co., LLC v. First Bank*, 227 N.C. App. 36, 43, 742 S.E.2d 287, 292–93 (2013) (alterations in original). Accordingly, "North Carolina courts generally find that parties who interact at arms-length do not have a fiduciary relationship with each other, even if they are mutually interdependent businesses." *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 621, 730 S.E.2d 763, 767 (2012). In the absence of other facts or circumstances demonstrating the existence of a fiduciary relationship, breach of fiduciary duty claims asserted between parties to a contract are subject to dismissal. *See, e.g.*, *Highland Paving Co.*, 227 N.C. App. at 42–43, 742 S.E.2d at 292–93 (dismissing constructive fraud claim because plaintiff's allegations that it placed special trust and confidence in defendant due to the parties' contract and previous dealings were insufficient to allege a fiduciary relationship); *Sykes v. Health Network Sols., Inc.*, 2017 NCBC LEXIS 73, at *69–70 (N.C. Super. Ct. Aug. 18, 2017) (concluding that dismissal of fiduciary duty claims was proper where plaintiff failed to show a joint venture or other special relationship that arose from the parties' contract).

77. Plaintiffs allege that they placed trust and confidence in the County, "through execution of certain agreements," including the Centerplate Contract pursuant to which the County agreed to protect Plaintiffs' confidential business information. (Compl. ¶ 154.) Plaintiffs further allege that a relationship of trust and confidence existed between Plaintiffs and Spectra Management because Plaintiffs submitted their confidential business information to Spectra Management pursuant

to the Centerplate Contract, by which Spectra Management was bound to abide pursuant to the Management Contract. (Compl. ¶¶ 153–54.)

78. After careful review of Plaintiffs' allegations, the Court concludes that Plaintiffs have failed to allege the existence of a fiduciary relationship between them and any Defendant. Plaintiffs' allegations demonstrate that their relationship with the County was contractual in nature and that the Centerplate Contract gave rise to any expectation Plaintiffs may have had that Spectra Management would protect Plaintiffs' confidential information. Plaintiffs' allegations that they were obligated to disclose confidential information to the County and Spectra Management pursuant to the Centerplate Agreement, in the absence of allegations demonstrating other circumstances giving rise to a relationship of trust and confidence, is insufficient to demonstrate that either the County or Spectra Management "figuratively held all of the cards." *See Highland Paving Co.*, 227 N.C. App. at 42–43, 742 S.E.2d at 292–93; *Sykes*, 2017 NCBC LEXIS 73, at *69–70. Therefore, Plaintiffs have failed to allege the existence of a fiduciary relationship, upon which Plaintiffs' claims for breach of fiduciary duty, constructive fraud, and aiding and abetting breach of fiduciary duty depend. *Forbis*, 361 N.C. at 528, 649 S.E.2d at 388; *Dalton*, 353 N.C. at 651, 548 S.E.2d at 707; *New Friendship Used Clothing Collection*, 2017 NCBC LEXIS 72, at *45.

79. Accordingly, the Court grants the Motions as to Plaintiffs' claims for breach of fiduciary duty, constructive fraud, and aiding and abetting fiduciary duty, and those claims are dismissed.

### E. Negligent Misrepresentation (Count VI)

80. Plaintiffs assert, as an alternative claim, that the County Defendants negligently misrepresented that the Food and Beverage Contract would be considered, voted on, and approved by the Board. (Compl. ¶ 169.)

81. The County Defendants argue that Plaintiffs' negligent misrepresentation claim is subject to dismissal because (1) Plaintiffs have failed to allege that they relied on any misrepresentations allegedly made by the County Defendants, and (2) the County Defendants are protected from Plaintiffs' negligent misrepresentation claim by governmental immunity. (County Defs.' Br. Supp. 12–15.)

82. Plaintiffs respond that they have sufficiently alleged justifiable reliance by alleging that they "actually and justifiably relied on" representations that the Food and Beverage Contract would be approved by the Board when participating in the bid process and by waiting to bring the instant action. (Pls.' Br. Opp'n 28 (citing Compl. ¶ 175).)

83. "The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Carmeyer, LLC v. Koury Aviation, Inc.*, 2017 NCBC LEXIS 82, at *27 (N.C. Super. Ct. Sept. 11, 2017) (quoting *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 369, 760 S.E.2d 263, 267 (2014)). Justifiable reliance is analogous to reasonable reliance in fraud actions. *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 224, 513 S.E.2d 320, 327 (1999). "[W]hen the party relying on the false or misleading representation could have discovered the truth

upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." *Bucci v. Burns*, 2018 NCBC LEXIS 93, at \*5 (N.C. Super. Ct. Sept. 4, 2018) (alternation in original) (quoting *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346, 511 S.E.2d 309, 313 (1999)); *see also Rountree v. Chowan Cty.*, 796 S.E.2d 827, 833 (N.C. Ct. App. 2017).

84. Accordingly, although "[w]hether a party's reliance is justified is generally a question for the jury," *Dallaire*, 367 N.C. at 369, 760 S.E.2d at 267, our Court of Appeals has held that where "the complaint fails to allege that [the plaintiff] was denied the opportunity to investigate or that [the plaintiff] could not have learned the true facts by exercise of reasonable diligence, the complaint fails to state [a] cause[] of action for . . . negligent misrepresentation[,]" *Eastway Wrecker Serv. v. City of Charlotte*, 165 N.C. App. 639, 645–46, 599 S.E.2d 410, 414 (2004) (quotation marks omitted) (affirming dismissal of claim for negligent misrepresentation where complaint failed "to include this required allegation"); *Oberlin Capital*, 147 N.C. App. at 60, 554 S.E.2d at 847 (same).

85. Plaintiffs allege that the Commission repeatedly represented that the Food and Beverage Contract would be presented to the Board. (Compl. ¶¶ 41, 59.) Plaintiffs further allege that, at a public Commission meeting, they raised the issue of who would ultimately award the contract, but the County attorney refused to answer. (Compl. ¶ 62.) Plaintiffs allege that, notwithstanding these representations,

the Commission awarded the Food and Beverage Contract to Spectra Food without Board approval.  (Compl. ¶ 89.)

86.    Notably absent from the Second Amended Complaint are any allegations that Plaintiffs were prevented from conducting further investigation, for instance by inquiring of the Board at a public meeting who would approve the contract, or that they could not have learned the true facts by exercising reasonable diligence. Moreover, the Court is not required to accept Plaintiffs' conclusory allegations that they "actually and justifiably relied on" the County Defendants' representations.  *See Good Hope Hosp.*, 174 N.C. App. at 274, 620 S.E.2d at 880.  Failure to plead any such non-conclusory allegations is fatal to Plaintiffs' claim for negligent misrepresentation.  *See Eastway Wrecker Serv.*, 165 N.C. App. at 645–46, 599 S.E.2d at 414; *Oberlin Capital*, 147 N.C. App. at 60, 554 S.E.2d at 847.

87.    Because the Second Amended Complaint reveals an absence of facts sufficient to state a claim for negligent misrepresentation, the Court concludes that the County Defendants' Motion as to that claim should be and is granted.  Plaintiffs' claim for negligent misrepresentation is therefore dismissed.

F.    **Misappropriation of Trade Secrets (Count IX)**

88.    Plaintiffs assert a claim for misappropriation of trade secrets against the Spectra Defendants, alleging that, pursuant to the Centerplate Contract, Plaintiffs submitted their confidential financial and operational information, including detailed sales and pricing reports for each event at the Crown Complex, to the Commission and Spectra Management.  (Compl. ¶ 197.)  Plaintiffs allege that, in violation of the

Board and its agents' obligation to protect the confidentiality of Plaintiffs' information, Spectra Management provided Plaintiffs' information to Spectra Food to assist Spectra Food in preparing a competing proposal for the Food and Beverage Contract. (Compl. ¶¶ 198–200, 202.) Plaintiffs further allege that Spectra Management misused its position with the Commission to acquire Plaintiffs' proposal prior to Plaintiffs' and Spectra Food's sales presentations, thus giving Spectra Food an unfair advantage. (Compl. ¶ 204.)

89. The Spectra Defendants argue that Plaintiffs' misappropriation of trade secrets claim is subject to dismissal because the pricing information contained in the Centerplate Contract, a negotiated contract with a public entity, is a public record subject to disclosure pursuant to a public records request. (Spectra Defs.' Br. Supp. 14.) The Spectra Defendants contend that the information is, therefore, not protectable as trade secret information, relying on *Wilmington Star-News, Inc. v. New Hanover Reg'l Med. Ctr., Inc.*, 125 N.C. App. 174, 182, 480 S.E.2d 53, 57 (1997). In that case, our Court of Appeals held that negotiated information contained in a contract with a public entity is not exempt from public disclosure pursuant to a public records request and is, therefore, not confidential, trade-secret information. *Id.* The Spectra Defendants further argue that any information contained in Plaintiffs' proposal does not constitute a trade secret because the RFP stated that any information provided in response to the RFP would become the property of the County. (Spectra Defs.' Br. Supp. 18 n.10.)

90. Plaintiffs respond that dismissal of the trade secrets claim as to information in the Centerplate Contract is improper on a Rule 12(b)(6) motion because the holding of *Wilmington Star-News*, which was decided on a motion for summary judgment, requires the Court to make a factual determination as to whether terms of the Centerplate Contract were negotiated by the contract parties or unilaterally developed by Plaintiffs. (Pls.' Br. Opp'n 36–37.) Plaintiffs further argue that, apart from information contained in the Centerplate Contract or Plaintiffs' proposal, Plaintiffs have alleged that they provided Spectra Management with their confidential and proprietary operational information, including detailed financial records, reports, sales data, and pricing policies, which information Spectra Management used to assist Spectra Food in preparing a competing proposal. (Pls.' Br. Opp'n 34 & n.8 (citing Compl. ¶¶ 35, 197).)

91. "The threshold question in any misappropriation of trade secrets case is whether the information obtained constitutes a trade secret . . . ." *Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 369, 555 S.E.2d 634, 639 (2001). The North Carolina Trade Secrets Protection Act defines a trade secret as

> business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> > a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
> >
> > b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152(3).

92. In determining whether information is a trade secret, North Carolina courts consider six factors:

> (1) the extent to which information is known outside the business; (2) the extent to which it is known to employees and others involved in the business; (3) the extent of measures taken to guard secrecy of the information; (4) the value of information to the business and its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could properly be acquired or duplicated by others.

*Horner Int'l Co. v. McKoy*, 232 N.C. App. 559, 567–68, 754 S.E.2d 852, 858 (2014). This Court has explained that, "[t]he factors overlap, and courts considering these factors do not always examine them separately and individually." *Addison Whitney, LLC v. Cashion*, 2017 NCBC LEXIS 23, at *15 (N.C. Super. Ct. Mar. 15, 2017) (alteration in original).

93. Apart from whether the information is a trade secret as defined by section 66-152(3), the involvement of a public body also raises the issue of whether the alleged trade secret information is subject to a public records request. The Public Records Act generally provides the public with "liberal access to public records." *Knight Publ'g Co. v. Charlotte-Mecklenburg Hosp. Auth.*, 172 N.C. App. 486, 489, 616 S.E.2d 602, 605 (2005). Public records include "all documents and papers made or received by any agency of North Carolina government in the course of conducting its public proceedings." *Virmani v. Presbyterian Health Servs. Corp.*, 350 N.C. 449, 462, 515 S.E.2d 675, 685 (1999) (citing N.C. Gen. Stat. § 132-1(a)). "Absent clear statutory exemption or exception, documents falling within the definition of 'public records' in

the Public Records Law must be made available for public inspection." *Id.* (quotation marks omitted). Furthermore, "[e]xceptions and exemptions to the Public Records Act must be construed narrowly." *Carter-Hubbard Publ'g Co. v. WRMC Hosp. Operating Corp.*, 178 N.C. App. 621, 624, 633 S.E.2d 682, 684 (2006).

94. Contracts with a public body, and any information contained therein, are generally considered public information. *See Womack Newspapers, Inc. v. Town of Kitty Hawk*, 181 N.C. App. 1, 11–12, 639 S.E.2d 96, 103–04 (2007) (affirming order that town produce contracts related to condemnation litigation); *Carter-Hubbard Publ'g Co.*, 178 N.C. App. at 628, 633 S.E.2d at 687 (concluding that, absent applicability of a statutory exemption for certain types of information, the entirety of public contracts are public records).

95. However, as relevant here, the Public Records Act exempts from public disclosure information where four conditions are satisfied: the information (1) "[c]onstitutes a 'trade secret' as defined in [N.C. Gen. Stat. §] 66-152(3)"; (2) "[i]s the property of a private 'person' as defined in [N.C. Gen. Stat. §] 66-152(2)"; (3) "[i]s disclosed or furnished to the public agency in connection with the owner's performance of a public contract or in connection with a bid, application, [or] proposal . . ."; and (4) "[i]s designated or indicated as 'confidential' or as a 'trade secret' at the time of its initial disclosure to the public agency." N.C. Gen. Stat. § 132-1.2(1). In determining this exception's applicability to information contained in a contract between a private person and a public entity, our Court of Appeals held that negotiated terms of a public contract are not exempt from disclosure because they are

not the "property of a private 'person'" as the terms belong to both the private party and the government entity. *Wilmington Star-News, Inc.*, 125 N.C. App. at 182, 480 S.E.2d at 57.

96. Plaintiffs' argument that such a determination requires the Court to make a factual determination as to whether the information was unilaterally created by Plaintiffs is misplaced. The *Wilmington Star-News* court considered whether the price lists at issue were unilaterally created as part of its determination that they qualified as trade secrets under section 66-152(3). *Id.* at 180–81, 480 S.E.2d at 56–57. However, qualification as a trade secret is only the first requirement to demonstrate that the information is exempt from public disclosure under section 132-1.2(1). The court concluded that the price lists were not exempt from public disclosure under the second requirement, i.e., that the information is the property of a "private person[,]" concluding that the price lists, because they were a contractual term upon which the parties agreed following negotiations, were the property of both the public and private entity. *Id.* at 182, 480 S.E.2d at 57.

97. The Board and Plaintiffs freely entered into the Centerplate Contract in 1996 and then renewed the contract in 2007. (*See* Compl. ¶¶ 20–21.) The pricing information, as part of the Centerplate Contract, was agreed to by both parties and was part of a public contract. Accordingly, to the extent Plaintiffs' misappropriation of trade secrets claim is premised on information contained in the Centerplate Contract, Plaintiffs' claim fails. Such information is not exempt from public disclosure because the information is not the property of a private person, but was a

contractual term agreed to by both Plaintiffs and the Board. *See Wilmington Star-News*, 125 N.C. App. at 182, 480 S.E.2d at 57.

98. To the extent Plaintiffs' misappropriation of trade secrets claim is premised on Plaintiffs' proposal submitted in response to the RFP, Plaintiffs' claim similarly fails. The RFP expressly stated that "[a]ll information submitted in response to this RFP shall become the property of the County of Cumberland." (RFP ¶ 4.05.) In the context of an RFP issued by a private corporation, our Court of Appeals has held that a bidder that submitted a proposal did not act reasonably to maintain the secrecy of its trade secrets because the RFP stated that information contained in the bid would become the property of the entity soliciting bids. *Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 526, 586 S.E.2d 507, 511–12 (2003).

99. Applying the same reasoning to the allegations in Plaintiffs' Second Amended Complaint, the Court concludes that Plaintiffs, in submitting their proposal to the Commission subject to the condition that the information contained therein would become the County's property, did not act reasonably to maintain the secrecy of their confidential information. Further, the submission of Plaintiffs' proposal takes the information contained therein outside of the exemption for information submitted in connection with a bid or proposal, as the information contained therein was no longer the property of a private person. N.C. Gen. Stat. § 132-1.2(1); *see Wilmington Star-News*, 125 N.C. App. at 182, 480 S.E.2d at 57.

100. However, the Court concludes that Plaintiffs have properly stated a claim for misappropriation of alleged trade secrets contained in the periodic operational

reports and related information that Plaintiffs submitted to Spectra Management as manager of the Crown Complex. Plaintiffs have alleged that, pursuant to their obligations under the Centerplate Contract, they submitted their confidential information to Spectra Management in its capacity as manager of the facility. (Compl. ¶¶ 30–35.) Plaintiffs allege that the information disclosed included detailed financial and operational reports, pricing policies, and sales data from each event at the Crown Complex. (Compl. ¶¶ 30, 34–35.) Plaintiffs further allege that Spectra Management, notwithstanding its contractual obligation to protect Plaintiffs' information, gave Plaintiffs' confidential information to Spectra Food to assist it in preparing a competing bid for the Food and Beverage Contract. (Compl. ¶ 35.) The Court concludes, for purposes of the Motions, that Plaintiffs have adequately alleged that the information submitted to Spectra Management may constitute trade secrets that were misappropriated by the Spectra Defendants.

101. Accordingly, the Court denies the Spectra Defendants' Motion to the extent that Plaintiffs' claim for misappropriation of trade secrets is based on Plaintiffs' detailed financial and operation reports, pricing policies, and sales data.

## G. Tortious Interference with Prospective Economic Advantage (Count XIII)

102. Plaintiffs assert a claim against the Spectra Defendants for tortious interference with prospective economic advantage, alleging that the Spectra Defendants worked together to unlawfully compete for the Food and Beverage Contract. (Compl. 53–54.) Plaintiffs allege that the Spectra Defendants misappropriated Plaintiffs' confidential and proprietary business information to

collaborate in preparing Spectra Food's bid and improperly influenced the bid process through Perry, Spectra Management's employee who also participated on the Commission. (Compl. ¶¶ 234–35.) Plaintiffs further allege that but for the Spectra Defendants' unjustified interference, Plaintiffs would have been the only responsive bidder and would have been awarded the Food and Beverage Contract. (Compl. ¶¶ 236–38.)

103. The Spectra Defendants argue that Plaintiffs' tortious interference claim fails as a matter of law because Plaintiffs cannot show that they would have been awarded the Food and Beverage Contract in the absence of the Spectra Defendants' alleged conduct. (Spectra Defs.' Br. Supp. 21–22.) The Spectra Defendants contend that such a showing cannot be made because the RFP gave the Commission discretion to cancel the RFP or not award the contract. (Spectra Defs.' Br. Supp. 21–22.)

104. Plaintiffs contend that their tortious interference claim is premised on the Spectra Defendants' "wrongful[] competition with [Plaintiff] in its *opportunity* to contract with the County." (Pls.' Br. Opp'n 41.) Plaintiffs further argue that, in the absence of the Spectra Defendants' conduct, they would have been the only responsive bidder and, therefore, "had a reasonable expectation that [they] may receive the contract." (Pls.' Br. Opp'n 41.)

105. "To establish tortious interference with prospective economic advantage, a plaintiff must show that the defendant, without justification, induced a third party to refrain from entering into a contract with the plaintiff, which would have been made absent the defendant's interference." *MLC Auto., LLC v. Town of S. Pines*, 207

N.C. App. 555, 571, 702 S.E.2d 68, 79 (2010). "However, a plaintiff's mere expectation of a continuing business relationship is insufficient to establish such a claim." *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 701, 784 S.E.2d 457, 463 (2016). "Instead, a plaintiff must produce evidence that a contract would have resulted but for a defendant's malicious intervention." *Id.*

106. Plaintiffs' repeated statements throughout their pleading that they would have been awarded the Food and Beverage Contract had the RFP process been conducted fairly and had Spectra Food been disqualified are conclusory allegations entitled to no weight. Under the express terms of the RFP, the Commission was free to cancel the RFP, issue a new RFP, or choose not to award the contract to any bidder. (RFP ¶ 4.05.) Indeed, such discretion is required to be included in RFPs by section 143-129(b). It follows, therefore, that had Spectra Food been disqualified from the RFP process, Plaintiffs would have had nothing more than a unilateral expectation that they would have been awarded the Food and Beverage Contract. Accordingly, Plaintiffs' allegations and the documents referred to in the Second Amended Complaint defeat their claim. *See Highland Paving Co.*, 227 N.C. App. at 40–42, 742 S.E.2d at 291–92 (dismissing claim where document outside the pleadings but properly considered on Rule 12(b)(6) motion contradicted material allegations of the complaint); *accord Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 206, 171 S.E.2d 873, 879 (1970) ("The terms of such exhibit control other allegations of the pleading attempting to paraphrase or construe the exhibit, insofar as these are inconsistent with its terms.").

107. Therefore, the Spectra Defendants' Motion as to Plaintiffs' claim for tortious interference with prospective economic advantage is granted, and that claim is dismissed.

## H. Unfair or Deceptive Trade Practices (Count XII)

108. Plaintiffs assert a UDTP claim against the Spectra Defendants, alleging that Spectra Management, through Perry, impermissibly controlled the RFP process, improperly influenced the Commission, and unlawfully obtained Plaintiffs' proposal prior to the parties' presentations. (Compl. ¶¶ 227–28.) Plaintiffs allege that the Spectra Defendants' conduct in misappropriating Plaintiffs' trade secrets and conspiring with Spectra Food and the Commission to deny Plaintiffs a fair opportunity to compete for the Food and Beverage Contract amount to violations of the North Carolina Unfair or Deceptive Trade Practices Act. (Compl. ¶¶ 229–30.)

109. The Spectra Defendants do not separately argue a basis for dismissal of Plaintiffs' UDTP claim, except to state in a footnote that the claim is subject to dismissal to the extent it is based on the Spectra Defendants' misappropriation of Plaintiffs' confidential information because Plaintiffs have not adequately alleged a claim for misappropriation of trade secrets. (*See* Spectra Defs.' Br. Supp. 19 n.11.)

110. Plaintiffs argue that their allegations of "numerous bad acts and wrongful conduct" may support a UDTP claim. (Pls.' Br. Opp'n 39–40.) Plaintiffs contend that their UDTP claim may be established by misappropriation of trade secrets, breach of fiduciary duty, constructive fraud, or tortious interference with prospective economic advantage. (Pls.' Br. Opp'n 39–40.)

111.    The elements of a claim for UDTP are "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013) (alteration in original).  "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007) (internal quotation marks omitted).  "[A] practice is deceptive if it has the capacity or tendency to deceive." *Id.* (alteration in original) (internal quotation marks omitted).

112.    Plaintiffs correctly note that our courts have held that certain statutory and common law claims can support a UDTP claim.  *See, e.g.*, *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 659–60, 670 S.E.2d 321, 329 (2009) (misappropriation of trade secrets); *Compton v. Kirby*, 157 N.C. App. 1, 20, 577 S.E.2d 905, 917 (2003) (breach of fiduciary duty and constructive fraud); *Roane-Barker v. Se. Hosp. Supply Corp.*, 99 N.C. App. 30, 41, 392 S.E.2d 663, 670 (1990) (tortious interference).  However, having concluded that Plaintiffs' claims for tortious interference with prospective economic advantage, breach of fiduciary duty, and constructive fraud are subject to dismissal, the Court further concludes that such claims may not support Plaintiffs' UDTP claim.

113.    Nevertheless, having concluded that Plaintiffs state a claim for misappropriation of trade secrets, the Court concludes that Plaintiffs have stated a

claim for UDTP.  *See Med. Staffing Network*, 194 N.C. App. at 659–60, 670 S.E.2d at 329; *Wells Fargo Ins. Servs. USA v. Link*, 2018 NCBC LEXIS 42, at *51 (N.C. Super. Ct. May 8, 2018) (denying motion to dismiss UDTP claim where UDTP claim was based on claim for misappropriation of trade secrets that survived dismissal).

114.    Therefore, the Court denies the Spectra Defendants' Motion as to Plaintiffs' UDTP claim, to the extent that claim is premised on alleged misappropriation of trade secrets.

### I.    Breach of Contract (Counts X, XI, & XVI)

115.    Plaintiffs allege three separate claims for breach of the Centerplate Contract: (1) against the Board for failing to maintain the confidentiality of Plaintiffs' information; (2) against Spectra Management for disclosing Plaintiffs' confidential business information to Spectra Food; and (3) against the Board for failing to reimburse Plaintiffs for useable inventory and supplies upon termination of the Centerplate Contract.  (Compl. 48–51, 56–57.)

116.    "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract."  *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000).  Defendants do not challenge the validity of the Centerplate Contract but, instead, argue only that Plaintiffs have failed to allege a breach thereof.  (County Defs.' Br. Supp. 17–20; Spectra Defs.' Br. Supp. 17.)

#### 1.    Confidentiality Provision

117.    Pursuant to the Centerplate Contract, the Board contractually agreed to protect Plaintiffs' proprietary and confidential information and to "be responsible for

ensuring that all of [its] employees and agents adhere to the obligations contained" therein. (Compl. ¶ 22 (alteration in original).) The Board delegated management responsibilities for the Crown Complex to Spectra Management through the Management Agreement, which obligated Spectra Management to observe and perform the covenants, conditions, and terms contained in all existing Crown Complex contracts. (Compl. ¶¶ 26–27.) Plaintiffs allege that Spectra Management violated the Management Agreement by providing Plaintiffs' protected information to Spectra Food in violation of the Centerplate Contract's confidentiality provision. (Compl. ¶ 35.)

118. The Board and Spectra Management argue that the agreement only protected Plaintiffs' "proprietary, *non-public information* and records[,]" which does not include the terms of the Centerplate Contract as a public contract. (County Defs.' Br. Supp. 17–18; Spectra Defs.' Br. Supp. 17.) The Board further argues that the confidentiality clause excluded information shared with the Board's "employees and agents who need such information in order to perform the obligations and enforce the rights of the Crown Center[.]" (County Defs.' Br. Supp. 19.)

119. Even if the Centerplate Contract permitted the Board to share Plaintiffs' confidential information with Spectra Management as the Board's employee and agent, there is no allegation that Spectra Food is an employee or agent of the County Defendants such that it may have needed Plaintiffs' confidential information. Therefore, the exclusion provision does not permit Spectra Management, or the County Defendants, to share that information with Spectra Food. Furthermore,

Plaintiffs allege that Spectra Food's proposal contained "strikingly similar financial terms, pricing, and sales information to those contained in [Plaintiffs'] confidential sales reports" that were submitted to Spectra Management pursuant to the Centerplate Contract. (Compl. ¶ 108.) Plaintiffs allege that such information was not disclosed with Plaintiffs' written consent, as required by the Centerplate Contract. (Compl. ¶ 203.) The Court concludes, for purposes of the Motions, that Plaintiffs have adequately alleged that Spectra Management disclosed Plaintiffs' confidential business information contained in Plaintiffs' financial reports to Spectra Food in violation of their contractual obligation.

120. Accordingly, the Court concludes that Plaintiffs adequately allege claims for breach of the Centerplate Contract's confidentiality provision, and Defendants' Motions are denied as to those claims.

### 2. Buy-Back Provision

121. Plaintiffs allege that the Board breached the Centerplate Contract by refusing to reimburse Plaintiffs for the remaining inventory and supplies at the Crown Complex following the expiration of the agreement. (Compl. ¶¶ 250–55.)

122. Upon termination of the Centerplate Contract, the Crown Center or Plaintiffs' successor was obligated to purchase Plaintiffs' remaining useable inventory and supplies. (Centerplate Contract § 53.4.1–.2.) Within fifteen days' of the Centerplate Contract's end, Plaintiffs were to submit a schedule of all useable inventory and supplies that Plaintiffs purchased for use at the Crown Complex, and

the Crown Center or Plaintiffs' successor was obligated to reimburse Plaintiffs' costs within five days of receipt of the schedule. (Centerplate Contract § 53.4.2.)

123. The Board argues that this provision is inapplicable because the Centerplate Contract expired at the end of its term, as extended, and the reimbursement provision only applies where the agreement is terminated by one of the parties before the end of the agreement's term. (County Defs.' Br. Supp. 20.) The Board points to the fact that the reimbursement provision states that it applies "[i]n the event of termination," and the Centerplate Contract sets forth certain circumstances that permit either party to terminate the contract prior to its natural expiration. (County Defs.' Br. Supp. 19–20.)

124. Plaintiffs argue that, notwithstanding the reimbursement provision's language that it applied upon termination of the agreement, the provision further provided that Plaintiffs must submit a schedule of useable inventory and supplies "after the date *of expiration* or termination," thus allowing a reasonable interpretation that Plaintiffs were entitled to reimbursement whether the contract was terminated prior to expiration or expired at the end of a fixed term. (Pls.' Br. Opp'n 43–44.)

125. Construing the terms of the Centerplate Contract in the light most favorable to Plaintiffs, as the Court must do on a Rule 12(b)(6) motion, the Court concludes that Plaintiffs have adequately alleged that the Board breached the reimbursement provision of the Centerplate Contract. Plaintiffs allege that the Centerplate Contract expired on February 28, 2018 and that Spectra Food succeeded

Plaintiffs as the food and beverage manager of the Crown Complex. (Compl. ¶¶ 251–52.) Plaintiffs allege that they properly submitted an invoice and schedule of remaining inventory and supplies to the Board through its agent, Spectra Management, but that the Board has refused to fully reimburse Plaintiffs for the remaining inventory and supplies. (Compl. ¶¶ 253–55.) Such allegations are sufficient to state a claim for breach of the buy-back provision.

126. Accordingly, the Court concludes that Plaintiffs adequately allege claims for breach of the Centerplate Contract's buy-back provision, and the County Defendants' Motion is denied as to that claim.

## J. Civil Conspiracy (Counts XIV & XV)

127. Plaintiffs assert two separate civil conspiracy claims. The first claim alleges that the Spectra Defendants conspired together to unlawfully win the Food and Beverage Contract by misappropriating Plaintiffs' trade secrets and breaching the confidentiality provisions of the Centerplate Contract. (Compl. ¶ 241.) The second claim alleges that the Spectra Defendants conspired with the County and Commission to ensure that Spectra Food was awarded the Food and Beverage Contract. (*See* Compl. ¶ 245.)

128. The County Defendants argue that Plaintiffs have not stated a viable conspiracy claim because the claim is premised on Plaintiffs' allegations of misappropriation of trade secrets, breach of the Centerplate Contract's confidentiality provision, and an improper bid process. (County Defs.' Br. Supp. 21.) The County Defendants argue that because those claims are subject to dismissal, they

cannot support Plaintiffs' conspiracy claim. (County Defs.' Br. Supp. 21.) The Spectra Defendants similarly contend that Plaintiffs' conspiracy claims fail to the extent that they are premised on misappropriation of trade secrets or violation of the Centerplate Contract's confidentiality provision. (*See* Spectra Defs.' Br. Supp. 18–19 & n.11.)

129. Plaintiffs respond that they have adequately alleged that the Spectra Defendants conspired to unlawfully win the Food and Beverage Contract by, *inter alia*, misappropriating Plaintiffs' trade secret and confidential information in violation of the Centerplate Contract, and that the Spectra Defendants also conspired with the County and Commission to ensure Spectra Food won the contract. (Pls.' Br. Opp'n. 42.)

130. Our Supreme Court has held that "a complaint sufficiently states a claim for civil conspiracy when it alleges (1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." *Krawiec v. Manly*, 370 N.C. 602, 614, 811 S.E.2d 542, 550–51 (2018) (quotation marks omitted).

131. Plaintiffs allege that the Spectra Defendants entered into an agreement or confederation with each other and with the County and Commission to misappropriate Plaintiffs' trade secrets, breach contractual provisions protective of Plaintiffs' interests, and commit UDTP, all with the end goal of ensuring that Spectra Food was awarded the Food and Beverage Contract. Because Plaintiffs have adequately alleged an agreement, wrongful acts by co-conspirators, and that

Plaintiffs were harmed, the Court concludes that Plaintiffs have stated claims for civil conspiracy.

132. Accordingly, the Court denies the Motions as to Plaintiffs' claims for conspiracy.

**K. Constitutional Claims (Count III)**

133. Plaintiffs allege that the County Defendants violated Plaintiffs' state and federal constitutional rights to equal protection and due process of law by acting unreasonably, arbitrarily, unequally, and unlawfully, and by failing to follow statutory and County procedures in conducting the RFP process and awarding the Food and Beverage Contract to Spectra Food. (Compl. ¶¶ 140–43, 147–50.)

134. "According to well-established North Carolina law, N.C. Const. art. I, § 19 'guarantees both due process rights and equal protection under the law' and has been interpreted as being similar to the due process clause of the Fourteenth Amendment to the Federal Constitution." *Doe v. Charlotte-Mecklenburg Bd. of Educ.*, 222 N.C. App. 359, 371, 731 S.E.2d 245, 253 (2012) (quoting *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004)). "Article I, Section 19 of the North Carolina Constitution guarantees both due process rights and equal protection under the law by providing that no person shall be 'deprived of his life, liberty, or property, but by the law of the land' and that 'no person shall be denied the equal protection of the laws.'" *Rhyne*, 358 N.C. at 180, 594 S.E.2d at 15 (quoting N.C. Const. art. I, § 19). "The term 'law of the land' as used in Article I, Section 19, of the Constitution of North Carolina, is synonymous with 'due process of law' as used in the Fourteenth

Amendment to the Federal Constitution.'" *In re Moore*, 289 N.C. 95, 98, 221 S.E.2d 307, 309 (1976).

135. As a threshold matter, the County Defendants argue that Plaintiffs are barred from asserting any constitutional claims, whether grounded in due process or equal protection, because Plaintiffs have failed to allege the absence of an adequate state remedy. (County Defs.' Br. Supp. 9–10.) Plaintiffs contend that, although they may not recover on their constitutional claims if they are ultimately entitled to recover on their non-constitutional state law claims, they are "free to raise all such claims in [their] complaint." (Pls.' Br. Opp'n 17 (citing *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 339–40, 678 S.E.2d 351, 355 (2009)).)

136. "To assert a direct constitutional claim . . . for violation of procedural due process rights, a plaintiff must allege that no adequate remedy exists to provide relief for the injury." *Copper v. Denlinger*, 363 N.C. 784, 788, 688 S.E.2d 426, 428 (2010) (citing *Corum v. Univ. of N.C.*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992) ("Therefore, in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution.")); *see also Frank v. Savage*, 205 N.C. App. 183, 191, 695 S.E.2d 509, 514 (2010) (noting that "[t]his principle holds for both state and federal due process claims" (citations omitted)).

137. "[T]he North Carolina Supreme Court's definition of adequacy is twofold: (1) that the remedy addresses the alleged constitutional injury and (2) that the remedy provides the plaintiff an opportunity to 'enter the courthouse doors[.]'" *Taylor*

*v. Wake Cty.*, 811 S.E.2d 648, 654 (N.C. Ct. App. 2018) (internal citations omitted) (quoting *Craig*, 363 N.C. at 339–40, 678 S.E.2d at 355). The state remedy addresses the alleged constitutional injury "if, assuming the plaintiff's claim is successful, the remedy would compensate the plaintiff for the *same injury* alleged in the direct constitutional claim." *Id.* at 655–56 (emphasis in original) (quoting *Estate of Fennell v. Stephenson*, 137 N.C. App. 430, 437, 528 S.E.2d 911, 915–16 (2000)). A complaint's failure to allege that no adequate state remedy exists is grounds for dismissal of a plaintiff's constitutional claims at the Rule 12(b)(6) stage. *See Frank*, 205 N.C. App. at 191, 695 S.E.2d at 514 (affirming dismissal of constitutional claims pursuant to Rule 12(b)(6) where the complaint failed to allege that no adequate state remedy exists).

138. The Second Amended Complaint is devoid of any allegation that no adequate state remedy exists to provide relief for the alleged constitutional injuries. Although both *Copper* and *Frank* addressed constitutional claims for procedural due process, the rationale supporting the rule in *Copper*, and applied in *Frank*, derives from our Supreme Court's decision in *Corum*, which concerned alleged freedom of speech violations, not procedural due process. *See Corum*, 330 N.C. at 770, 413 S.E.2d at 282. Additionally, our appellate courts have applied the holding and rationale in *Corum* to a variety of constitutional claims. *See, e.g., Craig*, 363 N.C. at 335, 678 S.E.2d at 352 (right to the privilege of education; no deprivation of a liberty interest or privilege but by the law of the land; schools and means of education shall be encouraged); *Davis v. Town of S. Pines*, 116 N.C. App. 663, 675–76, 449 S.E.2d 240,

247–48 (1994) (right not to be unlawfully imprisoned and deprived of liberty). Accordingly, the Court concludes that the pleading requirement stated in *Copper* applies to Plaintiffs' claims for substantive due process[3] and equal protection violations. Because Plaintiffs failed to allege that no adequate state remedy exists to provide relief for their alleged constitutional injuries, their constitutional claims are barred. *See Frank*, 205 N.C. App. at 191, 695 S.E.2d at 514.

139. Furthermore, Plaintiffs have asserted state law claims that, if successful, would provide compensation for the alleged constitutional injuries. In essence, Plaintiffs allege that the County Defendants failed to follow the processes mandated by section 143-129 and the County's policies, "in an intentional effort to award the [Food and Beverage Contract] to" Spectra Food and not to Plaintiffs, thereby violating Plaintiffs' due process rights and subjecting Plaintiffs "to disparate treatment under the laws without a rational basis." (Compl. ¶¶ 143–48.) As alleged, Plaintiffs' equal protection claim is based on the same alleged conduct as Plaintiffs' substantive due process claim.

---

[3]Although Plaintiffs style their due process claim as one for substantive due process, the Court believes the claim more appropriately sounds in procedural due process, and, thus, the rule in *Copper* applies directly to Plaintiffs' due process claim. For instance, Plaintiffs do not facially challenge the constitutionality of section 143-129 or the County's policies. *See Amward Homes, Inc. v. Town of Cary*, 206 N.C. App. 38, 64, 698 S.E.2d 404, 422 (2010) ("Substantive due process is a guaranty against *arbitrary legislation*, demanding that *the law* shall not be unreasonable, arbitrary or capricious[.]" (emphasis added)). Rather, Plaintiffs specifically and repeatedly allege that the County Defendants failed to follow, or implement in a fair manner, the processes outlined in section 143-129 and the County's own policies by failing to require a vote on the proposals by the Board and failing to disqualify Spectra Food's bid. Such allegations, it appears to the Court, sound in procedural, not substantive, due process. *See Bunch v. Britton*, 802 S.E.2d 462, 673 (N.C. Ct. App. 2017) ("Procedural due process protection ensures that when government action depriving a person of life, liberty, or property survives substantive due process review, that action is implemented in a fair manner.").

140. Plaintiffs seek, as a remedy for such alleged violations, a judgment that the County Defendants' actions were unconstitutional and that the award of the Food and Beverage Contract to Spectra Food is "invalid, unenforceable, and void." (Compl. ¶ 150.) Plaintiffs also seek monetary damages as a result of the violations. (Compl. ¶ 151.)

141. Plaintiffs' claims for declaratory judgment request that the Court: (1) "adjudge that the formal bidding procedures set forth in [section 143-129] appl[y] to the awarding of [the Food and Beverage Contract]," (Compl. ¶127); (2) declare that "the County be compelled to complete the bidding process in accordance with the procedures set forth in [section 143-129]," (Compl. ¶ 127); and (3) "adjudge the purported award [of the Food and Beverage Contract] to Spectra Food invalid," (Compl. ¶ 138). The relief sought by Plaintiffs in their claims for declaratory judgment, if granted, provides Plaintiffs with the procedural protections they seek as well as a declaration that the award of the Food and Beverage Contract to Spectra Food is invalid. Additionally, Plaintiffs base their second claim for civil conspiracy, seeking monetary damages, in part on allegations that the County Defendants, in a coordinated effort with the Spectra Defendants to award Spectra Food the Food and Beverage Contract, "unlawfully refus[ed] to follow the formal bidding procedures required by statute, local public contracting policies, and the RFP itself." (Compl. ¶ 245.)

142. The Court concludes that Plaintiffs' claims for declaratory judgment and second claim for civil conspiracy, if either are ultimately successful, would arguably

provide Plaintiffs with remedies that "would compensate [Plaintiffs] for the same injury alleged in [their] direct constitutional claim[s]." *Taylor*, 811 S.E.2d at 655–56 (quotation marks omitted). Therefore, Plaintiffs have an adequate state remedy for their alleged constitutional violations, and the constitutional claims must be dismissed. *See Copper*, 363 N.C. at 788–89, 688 S.E.2d at 428–29; *Frank*, 205 N.C. App. at 191, 695 S.E.2d at 514.

143. Accordingly, the Court grants the County Defendants' Motion as to Plaintiffs' claims for substantive due process and equal protection violations, and those claims are dismissed.

## VI. CONCLUSION

144. For the foregoing reasons, the Court **ORDERS** as follows:

A. The Court **GRANTS** the Motions as to Plaintiffs' claims for substantive due process and equal protection violations (Count III), breach of fiduciary duty and constructive fraud (Count IV), aiding and abetting breach of fiduciary duty (Count V), negligent misrepresentation (Count VI), violation of N.C. Gen. Stat. § 143-129 (Count VII), and tortious interference with prospective economic advantage (Count XIII). Those claims are **DISMISSED**.

B. The Court **DENIES** the Motions as to Plaintiffs' claims for declaratory judgment (Counts I and II), writ of mandamus, to the extent the claim does not request that the Court award the Food and Beverage Contract to Plaintiffs (Count VIII), misappropriation of

trade secrets, to the extent the claim is based on Plaintiffs' financial and operational reports, pricing policies, and sales data (Count IX), breach of contract (Counts X, XI, and XVI), unfair or deceptive trade practices (Count XII), and civil conspiracy (Counts XIV and XV).

**SO ORDERED**, this the 17th day of October, 2018.

/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases